UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:22-CV-00066-BO

BAIRD STOKES, )
)
    Appellant, )
)
v. ) ORDER
)
BELHAVEN SHIPYARD AND )
MARINA, INC. d/b/a RIVER FOREEST )
SHIPYARD and WILLIAM AXSON )
SMITH, JR., )
)
    Appellees. )

This cause comes before the Court on appeal from the United States Bankruptcy Court for the Eastern District of North Carolina.

## BACKGROUND

In 2019, Baird Stokes purchased a 39-foot 1983 Freedom Sailboat. The Sailboat needed some repairs, so Stokes sailed it to the Belhaven Shipyard in North Carolina. The Shipyard dry-docked it and began to repair the hull. Stokes lived on the Sailboat, and the Shipyard provided water, sewage, and electricity. In exchange for these services (storage, repairs, utilities), Stokes worked for the Shipyard. The barter-like arrangement existed until the relationship soured in the fall of 2020. Even then, the Sailboat remained dry-docked. Stokes never paid the Shipyard.

On July 20, 2021, Stokes filed for Chapter 7 bankruptcy. For exemption purposes, the bankruptcy court found that the Sailboat was Stokes' residence. On January 22, 2022, Stokes demanded that the Shipyard turnover the Sailboat. The Honorable Joseph N. Callaway held a hearing in which the parties agreed the Sailboat's value was $10,000. Belhaven Shipyard submitted

evidence of the repair, storage, and utility fees. Stokes submitted evidence of his barter-like arrangement with the Shipyard.

Stokes' motion was denied. In a "Turnover Order," the bankruptcy court found Belhaven Shipyard had a valid maritime lien against the Sailboat for $7,752.67. The Shipyard could retain possession of the Sailboat until the lien was fully paid. [DE 4-1]. If Stokes did not pay the lien by May 31, 2022, an additional $10 daily storage fee would begin to accrue. On appeal, Stokes challenges that Turnover Order.

## DISCUSSION

Jurisdiction over this appeal is proper pursuant to 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." A bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. *In re White*, 487 F.3d 199, 204 (4th Cir. 2007). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). Legal conclusions made by the bankruptcy court are reviewed de novo. *In re White*, 487 F.3d at 204. Mixed questions of law and fact are also reviewed de novo. *In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003).

Stokes raises three arguments why this Court should overturn the Turnover Order. First, Stokes claims that Belhaven Shipyard did not have a valid maritime lien on the Sailboat. Second, he argues the doctrine of laches should have barred the Shipyard's lien. And finally, he contends

that, even if the lien was valid, the commencement of bankruptcy proceedings should have obligated the Shipyard to return possession of the Sailboat to Stokes.

For the reasons that follow, the Court finds each one of these arguments unpersuasive. If Stokes wishes to recover the Sailboat, he must satisfy the valid and existing maritime lien encumbering it.

1. Belhaven Shipyard holds a valid maritime lien against the Sailboat.

A maritime lien is a federal statutory lien founded in admiralty. *In re H&S Transp. Co.*, 42 B.R. 164, 168 (Bankr. M.D. Tenn. 1984). Admiralty is an enumerated power of the federal government exclusively reserved in the United States Constitution. U.S. Const. art. III, § 2, cl. 1. The "Maritime Lien Act," 46 U.S.C. § 31342, creates a federal maritime lien, which serves as a "serv[es] the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away. The lien is a special property right in the vessel, arising in favor of the creditor by operation of law as security for a debt or claim." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986). "The perfection of a maritime lien does not require that a creditor record his lien, obtain possession of the vessel, or file a claim against the ship." *In re Muma Servs., Inc.*, 322 B.R. 541, 546 (Bankr. D. Del. 2005).

Stokes argues the Shipyard did not establish a valid maritime lien on the Sailboat. "For a party to establish a maritime lien in a vessel: (1) the good or service must qualify as a "necessary"; (2) the good or service must have been provided to the vessel; (3) on the order of the owner or agent; and (4) the necessaries must be supplied at a reasonable price." *Barcliff, LLC v. M/V DEEP BLUE, IMO No. 9215359*, 876 F.3d 1063, 1068 (11th Cir. 2017). The bankruptcy court correctly found (1) the Shipyard's services – storage, repairs, and utilities – were necessary (2) and were

provided to the Sailboat (3) upon Stokes' request (4) at a reasonable price. Thus, the bankruptcy court correctly found that Shipyard had a federal maritime lien on the Sailboat.

The calculation of the lien is a factual matter, so it will be affirmed unless it is clearly erroneous. In calculating the $7,752.67 lien, the bankruptcy court weighed conflicting testimony and documentary evidence. The Shipyard initially argued that the lien should be $17,547.54, but the bankruptcy court rejected some improperly claimed fees. For example, the bankruptcy court denied Shipyard's request to include their attorney fees in the lien. The bankruptcy court also found the parties had a barter-like relationship: Stokes worked for the Shipyard, and the Shipyard stored the Sailboat. That relationship ended in the fall of 2020, so the bankruptcy court only imposed storage fees from that point forward. Every step of the way, the bankruptcy court thoroughly explained its reasoning. Stokes does not explain how the calculation was incorrect, so this Court is satisfied that the $7,752.67 figure is not clearly erroneous.

And the $10.00 daily postpetition storage fee was not clearly erroneous either. The fee was a reasonable market rate, and the automatic stay of 11 U.S.C. § 362(a) does not prevent or stop the accumulation of valid postpetition storage fees. *City of Chicago v. Fulton*, 141 S. Ct. 585 (2021).

2. The lien is not barred by the doctrine of laches.

Stokes argues that the doctrine of laches should have barred the Shipyard's lien. Laches may apply to a maritime lien based "upon 'the peculiar equitable circumstances' of each case." *Ryan-Walsh, Inc. v. M/V Ocean Trader*, 930 F. Supp. 210, 213 (D. Md. 1996) (*quoting The Key City*, 81 U.S. 653, 20 L. Ed. 896 (1871)). A successful claim "requires both inexcusable delay and prejudice." *S.C. State Ports Auth. v. M/V Tyson Lykes*, 837 F. Supp. 1357 (D.S.C. 1993), 837 F. Supp. At 1369. Stokes fails to show Shipyard's unreasonable delay in asserting the lien. Indeed,

the Shipyard asserted the lien within the statute of limitations, which is evidence their delay was not unreasonable. *Id.* at 1370; N.C. Gen. Stat. § 1-52.

3. The Shipyard can possess the Sailboat until the lien is paid.

The bankruptcy court allowed Shipyard to "retain possession of the Sailboat until the lien is paid or another arrangement is reached." [DE 4-1 at 63]. Stokes argued that an *in rem* action was necessary to effectuate Shipyard's maritime lien. However, an *in rem* action was not necessary to effectuate the lien because a maritime lien is properly perfected the moment the necessary services are performed. It does not require a creditor to record his lien, obtain possession of the vessel, or file a claim against the ship. *See In re Muma Servs., Inc.*, 322 B.R. 541, 546 (Bankr. D. Del. 2005).

According to Stokes, once he filed for bankruptcy, 11 U.S.C. § 362 required the Shipyard to return the Sailboat. However, the Shipyard's continued possession of the Sailboat was appropriate. Because the Shipyard possessed the Sailboat when Stokes filed for bankruptcy, the Shipyard's possession did not disturb the "status quo of estate property." *City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 590 (2021).

## CONCLUSION

For the foregoing reasons, the order of the bankruptcy court [DE 1-1] is AFFIRMED.

SO ORDERED, this ___9___ day of June, 2023.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE